## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

GALLERY ART GROUP, INC., a Florida
corporation d/b/a Gallery Art, and
KENNETH HENDEL, an individual,

     Plaintiffs,

                             CASE NO.

v.

WILMA TISCH, an individual,

     Defendant.

_____/

### COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiffs, Gallery Art Group, Inc. d/b/a Gallery Art ("Gall Art") and Kenneth Hendel ("Hendel") (collectively, "Plaintiffs"), by and through its undersigned counsel, hereby files this Complaint and sues Defendant, Wilma Tisch ("Defendant" or "Tisch"), and alleges as follows:

### JURISDICTION AND VENUE

1.      This is an action for declaratory relief concerning personal property, the value of which exceeds $75,000.00, pursuant to 28 U.S.C. §§ 2201 and 2202, and for money damages in excess of $75,000.00.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

3.       This Court has personal jurisdiction over Tisch because Tisch claims an ownership interest in personal property situated in the State of Florida, over which property Gall Art claims an ownership interest, and further because Tisch's false and defamatory assertions made by her and by her agents and representatives on her behalf at her direction and control, which were published in the State of Florida, that she is the true owner of the personal property at issue in this Action, that the personal property was stolen from her and that Hendel and/or Gall Art were going to sell the personal property on the black market, were directed to Hendel, Gall Art and Gall Art's personal property in the State of Florida and caused damages to Hendel and Gall Art in the State of Florida.

4.       Venue is proper in the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. §1391(b)(2) because this is the District and Division in which a substantial part of the events or omissions giving rise to the claim(s) occurred.

## THE PARTIES

5.       Plaintiff Gall Art is and was, at all material times, a corporation organized and existing under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida.

6.       Plaintiff Hendel is and was, at all material times, an individual residing in the State of Florida, Miami-Dade County, and is otherwise *sui juris*.

7.       Defendant Tisch is and was, at all material times, an individual residing in New York County in the State of New York, and is otherwise *sui juris.*

## <u>GENERAL ALLEGATIONS</u>

8.      On June 18, 2013, Gall Art purchased a certain art work by Pablo Picasso known as "Portrait of Demarie-Therese" (the "Artwork") from Miami Art Fund, LLC, a Florida limited liability company, merchant, and art dealer ("Art Fund"), which regularly deals in works of art similar to the Artwork, with its principal place of business in Miami-Dade County, Florida. A true and correct copy of the Bill of Sale for the Artwork is enclosed herewith as **Exhibit "A."**

9.      Gall Art paid good and valuable consideration to Art Fund for the Artwork. A true and correct copy of the wire transfer from Gall Art to Art Fund confirming payment of the purchase price is enclosed herewith as **Exhibit "B."** In addition to $350,000.00 cash, Gall Art tendered fine art whose value was $150,000.00 as additional payment for the Artwork.

10.     Prior to purchasing the Artwork, Gall Art assiduously investigated both the authenticity and the provenance of the Artwork to ensure that they would acquire good, sound and unimpeachable title to the Artwork from Art Fund.

11.     As part of Gall Art's investigation, Gall Art researched the purchase price of the Artwork through opinions rendered by both Christie's and Sotheby's.

12.     In particular, Gall Art reviewed Sotheby's catalogue of May 7, 2013 of Impressionist & Modern Art Evening Sale in which the Artwork was prominently

displayed on Pages 248 and 249 thereon. A true and correct copy of the front page and pages 248 and 249 of Sotheby's Catalogue is enclosed herewith as **Exhibit "C."**

13.      Sotheby's Catalogue sets forth the provenance of the Artwork through to a private collection, which was Art Fund, as established by the consignment agreement between Art Fund and Sotheby's, that was reviewed by Gall Art to confirm that Art Fund was the then-present owner of the Artwork.

14.      In addition, Gall Art researched the database of the Art Loss Register, Interpol's database of stolen art, and conducted further research and determined that there were no police reports, insurance claims or any other claims, reports or other records available from any public source of information of the Artwork having been stolen, misappropriated, or lost or missing from anyone, including from Tisch.

15.      Furthermore, Gall Art confirmed the authenticity of the Artwork with Claude Picasso, who confirmed that the Artwork was in fact genuine and original.

16.      After completing the purchase of the Artwork from Art Fund and paying fair market value for same on June 18, 2013, and after publicly displaying the Artwork at major art shows and in its gallery without any adverse claims to Gall Art's ownership of the Artwork, Gall Art, the titleholder of the Artwork, shipped the Artwork to New York, NY around April 12, 2016, so that its agent, Michael Haber ("Haber"), a broker-dealer of works of art similar to the Artwork, could present it to various clients of his as potential purchasers.

17.     At Haber's request, on April 12, 2016, Gall Art, as bailor, entrusted the Artwork to Day & Meyer, Murray & Young Corp ("Day"), a public bonded and insured warehouse, as Gall Art's bailee, to allow for it to be viewed by various potential purchasers of the Artwork presented to Gall Art by Haber.

18.     Without conducting an investigation regarding the facts and circumstances under which Gall Art acquired its ownership interest in the Artwork, including from whom Gall Art acquired the Artwork, whether the seller to Gall Art of the Artwork was a merchant dealing in works of art similar to the Artwork, whether Gall Art was a *bona fide* purchaser for value of the Artwork, where Gall Art's purchase of the Artwork took place and the law pertaining to ownership at the place of the transaction, and without investigating the circumstances under which the Artwork was allegedly unaccounted for by Tisch since 2009, the time since Tisch claims it was no longer in Tisch's Manhattan apartment, Tisch took the erroneous position that she was the true owner of the Artwork as opposed to Gall Art, and that the Artwork was stolen from her at some unidentified time in the past by some unidentified person or persons.

19.     On April 14, 2016, while the Artwork was in Day's warehouse in New York, Tisch, through her counsel, wrongfully and maliciously contacted Haber and Day and slandered Gall Art's title to the Artwork by publishing a letter and by verbally advising Haber and Day that the Artwork was stolen from Tisch and that Tisch is the true owner of the Artwork. Copies of the correspondence from Tisch to Michael Haber dated April 14,

2016, and emails republishing the letter to Day are annexed hereto as **Composite Exhibit**

**"D."** Moreover, Tisch falsely claimed, without even the faintest knowledge of who Hendel

or Gall Art are, that if Day released the Artwork to Gall Art, Gall Art would secrete it and

sell it on the black market.

20.     On the same day, Gall Art, not knowing of Tisch's demands and assertions,

ordered Day to release the Artwork for reshipment back to Gall Art in Miami-Dade County,

Florida, and Day advised Plaintiffs that the Artwork was re-crated, was prepared to be

shipped back and was ready for pick-up.

21.     However, at approximately 1:16 pm on April 15, 2016, as a result of Tisch's

libelous and slanderous assertions of ownership of the Artwork and false claims that the

Artwork was stolen from her, Day advised Gall Art that Day would not be releasing the

work until the question of ownership of the Artwork is resolved.

22.     Day further requested proper documentation from Gall Art proving Gall

Art's ownership and title of the Artwork.

23.     On April 18, 2016, after receiving a demand letter from Gall Art to release the

Artwork, Day released the Artwork to the custody of Gall Art.

24.     Up through at least April 18, 2016, Tisch has never reported to any publicly

available source or private insurer that the Artwork was stolen or improperly removed

from her, other than the claims referenced in this Action.

25.     Because Gall Art is a Florida corporation that acquired title to the Artwork from Miami Art Fund, LLC, a Florida limited liability company, in Florida, Florida law governs the transaction in question and the status of Gall Art's title to the Artwork. The Artwork was only in New York for a mere footfall when Tisch made her libelous and slanderous publications, in, among other places, Florida, causing damage to Gall Art in the State of Florida, and were published throughout the close-knit art world both domestically and internationally, and have been widely reported in mediums of public communication, which reports were published, among other places, in Miami-Dade County, Florida.

26.     The Artwork was purchased by Tisch's husband, Laurence Tisch, in 1965 for Eleven Thousand and 00/100 Dollars ($11,000.00). A copy of the Parke-Bernet Galleries, Inc., invoice recording the sale of the Artwork to Laurence Tisch is annexed hereto as **Exhibit "E."**

27.     From 2009, when the Artwork became, according to Tisch, mysteriously unaccounted for, until April 2016, Tisch never reported the Artwork stolen to any governmental agency or publicly available source, such as the database of the Art Loss Register or Interpol's database of stolen art, or even to the Artwork's insurer. Tisch is a sophisticated collector of fine art, and is knowledgeable of the registries and methodologies by which loss or theft of fine art is disclosed to the public in order to protect the victims of stolen art and to alert the public and prevent innocent purchasers for value, such as Gall Art, from purchasing art where there was a claim of theft in the chain of title.

28.     However, it is Tisch's position that, knowing the Artwork was missing since 2009 and taking no measures to inform the public and to protect her purported interest in the Artwork, Tisch should be able to recover the Artwork as its sole owner by merely asserting that at some unknown point in time it was stolen.

29.     On the other hand, Gall Art believes, but is not certain, that Tisch gifted the Artwork to her maid and caretaker, the mother of Heidy Valda, as an expression of gratitude for the care and comfort which was provided to Tisch by her, and that Heidy Valda's mother, prior to leaving for Ecuador, gifted the painting to Heidy Valda, who was not knowledgeable of the value or authenticity of the Artwork.

30.     Heidy Valda, with no means to determine the value or authenticity of the Artwork, sold it to Art Fund.

31.     Art Fund, acquiring good title to the Artwork, caused the Artwork to be consigned to Sotheby's to be sold in a public auction. Sotheby's caused the history and provenance of the Artwork to be published for the public, including Tisch, whose identity in the chain of title to the Artwork was included in the catalogue publication depicting the works of art to be auctioned to the public along with the Artwork, to view, and for the Artwork to be sold at Sotheby's public auction.

32.     Sotheby's is one of the largest and most reputable auction houses of fine art in the world. Sotheby's posting the Artwork for sale at auction to the public with a

description of its provenance constitutes a reliable endorsement of the authenticity of and good title to the Artwork as described in the Sotheby's catalogue.

33.     Hendel, as the owner of Gall Art, has worked tirelessly for the past thirty years to establish himself from humble beginnings as an honest, ethical and reliable art dealer. Gall Art and Hendel have been established fine art dealers for over thirty years, who enjoyed an excellent reputation for honesty, integrity, and dealing fairly with the public both in the United States and Internationally, in the art dealing industry and in the community in which they conduct their business.

34.     Plaintiffs have retained the undersigned attorneys and are required to pay their attorneys a reasonable fee for their services in connection with this matter.

35.     All conditions precedent to the institution and maintenance of this action have been performed, excused, waived, or otherwise occurred.

## COUNT I
### SLANDER OF TITLE

*Gall Art realleges and reincorporates by reference the allegations contained in paragraphs 1-35 as if fully set forth herein.*

36.     Tisch wrongfully and maliciously contacted Haber and Day and slandered Gall Art's title to the Artwork by publishing a letter and by verbally advising Haber and Day that the Artwork was stolen from Tisch and that Tisch is the true owner of the Artwork. Moreover, Tisch falsely claimed, without even the faintest knowledge of who Hendel or Gall Art are, that if Day released the Artwork to Gall Art, Gall Art would secrete

it and sell it on the black market. The Artwork was only in New York for a mere footfall when Tisch made her libelous and slanderous publications, in, among other places, Florida, causing damage to Gall Art in the State of Florida, and were published throughout the close-knit art world both domestically and internationally, and have been widely reported in mediums of public communication, which reports were published, among other places, in Miami-Dade County, Florida, in order to wrongfully, intentionally, and maliciously disparage the title to and the vendibility of the Artwork.

37.    The statements made to the entire world, including those published to Haber and Day were false, lacked legal and factual justification, and impaired the vendibility of the Artwork. Because of the false statements Tisch made to Haber and Day, Day detained the Artwork and refused its release to Gall Art. As Tisch has placed Gall Art's ownership of the Artwork in question, the Artwork is no longer vendable until the ownership of the Artwork is established beyond dispute.

38.    Tisch knew or reasonably should have known that the false statements she made regarding her claim to ownership of the Artwork, that it was stolen, and that Gall Art would sell it on the black market, would cause damage to Gall Art.

39.    Tisch also knew or reasonably should have known that the false statements made to Haber and/or Day would likely result in inducing Haber to not deal with Gall Art, would disparage Gall Art's title to the Artwork, and would cause Gall Art damage in making Gall Art's Artwork non-vendable and non-marketable. The fine art community is a

reputation-driven, close-knit community, and false statements such as those made by Tisch are incredibly damaging to Gall Art's reputation and good will within the fine art community in Florida and at large.

40.     Tisch therefore slandered Gall Art's title to the Artwork by falsely claiming that she is the Artwork's rightful owner, thereby directly and proximately causing Gall Art damages, including, but not limited to, the total loss of the vendibility and market value of the Artwork, all losses, expenses, fees and costs associated with Haber and/or Day taking actions adverse to the interests of Gall Art, and associated with the Gall Art's inability to sell or otherwise alienate the Artwork.

41.     Tisch acted with malice, moral turpitude, gross negligence, reckless indifference to the rights of others, wantonness, oppression, and outrageous aggravation towards Gall Art. If Tisch's misconduct were permitted without rebuke, it would encourage others to engage in such reprehensible misconduct.

**WHEREFORE**, Plaintiff, Gallery Art Group, Inc. d/b/a Gallery Art, respectfully requests that this Honorable Court render judgment in its favor and against Defendant, Wilma Tisch, for actual, compensatory and consequential damages, punitive damages, and to award it pre-and post-judgment interest, costs, attorney's fees and such other relief as the Honorable Court deems just, equitable and proper.

## COUNT II
### ACTION FOR DECLARATORY JUDGMENT
### (28 U.S.C. § 2201, *ET SEQ.*)

*Gall Art realleges and reincorporates by reference the allegations contained in paragraphs 1-35 as if fully set forth herein.*

42.     This is an action for declaratory and other relief pursuant to Fed.R.Civ.P. 57, 28 U.S.C. §§ 2201, 2202.

43.     This Court has the jurisdiction to declare the rights, status and other equitable or legal relationships, whether or not further relief could be claimed.

44.     This Court may render declaratory judgments on the existence, or non-existence, of any immunity, power, privilege or right; or of any fact upon which existence or non-existence of such immunity, power, privilege, or right does or may depend; whether such immunity, power, privilege or right, now exists or will arise in the future.

45.     As a result of the challenges made by Tisch against Gall Art's title and interest to the Artwork, Tisch has created doubt and uncertainty as to its ownership interest in the Artwork and its powers, rights, status or other legal or equitable rights and interests with respect to whether Gall Art is the owner of the Artwork and has the ability to transfer title to the Artwork to a third party purchaser.

46.     As a result of the doubt created by Tisch as to Gall Art's rights, status, privileges and immunities, Gall Art has an actual, present and immediate need for a declaration of its rights, status or other legal or equitable relations and interests regarding

the foregoing matters. Without such a declaration the Artwork is non-vendable and is commercially worthless as merchandisable property in Gall Art's course of business as a dealer of fine art.

47.     Moreover, this Court has the power to grant further relief based upon a declaratory judgment when necessary or proper.

48.     So that the parties hereto can obtain a timely declaration of their rights, status or other legal or equitable relations relating to the matters described herein, this matter should be advanced on the Court's calendar.

**WHEREFORE**, Plaintiff, Gallery Art Group, Inc. d/b/a Gallery Art, respectfully requests that this Honorable Court take jurisdiction over this cause and enter judgment declaring Gall Art's and Defendant, Wilma Tisch's rights, status or other legal or equitable relations regarding the Artwork, as set forth herein; for additional, alternative, coercive, subsequent or supplemental relief to effectuate the Court's declaration; for attorney's fees and costs; and for such other and further relief that this Honorable Court deems just or proper.

## COUNT III
### ACTION FOR DECLARATORY JUDGMENT
#### (FLA. STAT. § 86.01, *ET SEQ.*)

*Gall Art realleges and reincorporates by reference the allegations contained in paragraphs 1-35 as if fully set forth herein.*

49.     This is an action for declaratory and other relief pursuant to Fla. Stat. § 86.01, *et seq.*

50.     This Court has the jurisdiction to declare the rights, status and other equitable or legal relationships, whether or not further relief could be claimed.

51.     This Court may render declaratory judgments on the existence, or non-existence, of any immunity, power, privilege or right; or of any fact upon which existence or non-existence of such immunity, power, privilege, or right does or may depend; whether such immunity, power, privilege or right, now exists or will arise in the future.

52.     As a result of the challenges made by Tisch against Gall Art's title and interest to the Artwork, Tisch has created doubt and uncertainty as to its ownership interest in the Artwork and its powers, rights, status or other legal or equitable rights and interests with respect to whether Gall Art is the owner of the Artwork and has the ability to transfer title to the Artwork to a third party purchaser.

53.     As a result of the doubt created by Tisch as to Gall Art's rights, status, privileges and immunities, Gall Art has an actual, present and immediate need for a declaration of its rights, status or other legal or equitable relations and interests regarding the foregoing matters. Without such a declaration the Artwork is non-vendable and is essentially worthless as merchandisable property in Gall Art's course of business as a dealer of fine art.

54.     Moreover, pursuant to Florida Statute § 86.61, this Court has the power to grant further relief based upon a declaratory judgment when necessary or proper.

55.     Pursuant to Fla. Stat. § 86.111, and so that the parties hereto can obtain a timely declaration of their rights, status or other legal or equitable relations relating to the matters described herein, this matter should be advanced on the Court's calendar.

**WHEREFORE**, Plaintiff, Gallery Art Group, Inc. d/b/a Gallery Art, respectfully requests that this Honorable Court take jurisdiction over this cause and enter judgment declaring Gall Art's and Defendant, Wilma Tisch's rights, status or other legal or equitable relations regarding the Artwork, as set forth herein; for additional, alternative, coercive, subsequent or supplemental relief to effectuate the Court's declaration; for attorney's fees and costs; and for such other and further relief that this Honorable Court deems just or proper.

## COUNT IV
### LIBEL (AS TO GALL ART)

*Gall Art realleges and reincorporates by reference the allegations contained in paragraphs 1-35 as if fully set forth herein.*

56.    Tisch has intentionally and maliciously published, or through her gross negligence caused to be published, false or materially misleading statements, or statements which create a false impression, about Gall Art to the fine art community, without a privilege to do so.

57.    Tisch wrongfully and maliciously contacted Haber and Day and slandered Gall Art's title to the Artwork by publishing a letter and by verbally advising Haber and Day that the Artwork was stolen from Tisch and that Tisch is the true owner of the Artwork. Moreover, Tisch falsely claimed, without even the faintest knowledge of who Hendel or Gall Art are, that if Day released the Artwork to Gall Art, Gall Art would secrete it and sell it on the black market. The Artwork was only in New York for a mere footfall when Tisch made her libelous and slanderous publications, in, among other places, Florida,

causing damage to Gall Art in the State of Florida, and were published throughout the close-knit art world both domestically and internationally, and have been widely reported in mediums of public communication, which reports were published, among other places, in Miami-Dade County, Florida.

58.     The repeated republication of these false statements about Gall Art by third parties, both orally and in writing, was reasonably foreseeable by Tisch, who is herself a sophisticated collector of fine art, and a prominent member of the fine art community. The fine art community is a reputation-driven, close-knit community, and clients and potential clients frequently discuss art dealers both orally, through written correspondence and through social networking websites, and the false statements published by Tisch about Gall Art have been widely reported in mediums of public communication.

59.     The reputation of an art dealer is essential to the art buying public in determining the value, genuineness and title to fine art as represented by an art dealer such as Gall Art, the trust in which art dealer by its clientele being essential to provide the confidence and assurance to a buyer that they are acquiring title to a genuine work of art in their purchase from an art dealer. The fine art trade revolves around trust, and damage to an art dealer's reputation is ruinous to that dealer's business.

60.     The false statements communicated by Tisch to third parties were of such a nature that the business reputation and status of Gall Art as a dealer of fine arts has been completely undermined, diluted and impaired.

61.     The false statements were disseminated within the fine art community subjecting Gall Art to embarrassment, disrepute and negative business and economic consequences.

62.     As a direct and proximate result of the foregoing misconduct of Tisch, Gall Art has suffered monetary damages stemming from, *inter alia*, loss of goodwill in its company's name, lost income, profits and business opportunities, as well as from public humiliation, obloquy and ostracism from the art dealing community, disparagement of its reputation in the business community, and the loss of its reputation as a fair and honest dealer in fine art.

**WHEREFORE,** Plaintiff, Gallery Art Group, Inc. d/b/a Gallery Art, demands judgment against the Defendant, Wilma Tisch, for monetary damages, consequential damages, punitive damages, pre- and post-judgment interest and court costs, together with such other and further relief as this Honorable Court deems just and proper.

## COUNT V
### LIBEL *PER SE* (AS TO GALL ART)

*Gall Art realleges and reincorporates by reference the allegations contained in paragraphs 1-35 as if fully set forth herein.*

63.     Tisch has intentionally and maliciously published, or through her gross negligence caused to be published, false or materially misleading statements, or statements which create a false impression, about Gall Art to the fine art community, without a privilege to do so.

64.     Tisch wrongfully and maliciously contacted Haber and Day and slandered Gall Art's title to the Artwork by publishing a letter and by verbally advising Haber and Day that the Artwork was stolen from Tisch and that Tisch is the true owner of the Artwork. Moreover, Tisch falsely claimed, without even the faintest knowledge of who Hendel or Gall Art are, that if Day released the Artwork to Gall Art, Gall Art would secrete it and sell it on the black market. The Artwork was only in New York for a mere footfall when Tisch made her libelous and slanderous publications, in, among other places, Florida, causing damage to Gall Art in the State of Florida, and were published throughout the close-knit art world both domestically and internationally, and have been widely reported in mediums of public communication, which reports were published, among other places, in Miami-Dade County, Florida.

65.     The repeated republication of these false statements about Gall Art by third parties, both orally and in writing, was reasonably foreseeable by Tisch, who is herself a sophisticated collector of fine art, and a prominent member of the fine art community. The fine art community is a reputation-driven, close-knit community, and clients and potential clients frequently discuss art dealers both orally, through written correspondence and through social networking websites, and the false statements published by Tisch about Gall Art have been widely reported in mediums of public communication .

66.     Due to the nature of the false statements, and especially because they speak to and negatively affect Gall Art's business character and status in the fine art dealing

community, the statements are libelous *per se*, and malice and damages are presumed. Notwithstanding such a presumption, Tisch acted with malice, moral turpitude, gross negligence, reckless indifference of the rights of others, wantonness, oppression and/or outrageous aggravation towards Gall Art. If Tisch's conduct was permitted without rebuke, it would encourage others to engage in such reprehensible misconduct.

67.     The reputation of an art dealer is essential to the art buying public in determining the value, genuineness and title to fine art as represented by an art dealer such as Gall Art, the trust in which art dealer by its clientele being essential to provide the confidence and assurance to a buyer that they are acquiring title to a genuine work of art in their purchase from an art dealer. The fine art trade revolves around trust, and damage to an art dealer's reputation is ruinous to that dealer's business.

68.     The false statements communicated by Tisch to third parties were of such a nature that the business reputation and status of Gall Art as a dealer of fine arts has been completely undermined, diluted and impaired.

69.     The false statements were disseminated within the fine art community subjecting Gall Art to embarrassment, disrepute and negative business and economic consequences.

70.     As a direct and proximate result of the foregoing misconduct of Tisch, Gall Art has suffered monetary damages stemming from, *inter alia*, loss of goodwill in its company's name, lost income, profits and business opportunities, as well as from public

humiliation, obloquy and ostracism from the art dealing community, disparagement of its reputation in the business community, and the loss of its reputation as a fair and honest dealer in fine art.

**WHEREFORE,** Plaintiff, Gallery Art Group, Inc. d/b/a Gallery Art, demands judgment against the Defendant, Wilma Tisch, for monetary damages, consequential damages, punitive damages, pre- and post-judgment interest and court costs, together with such other and further relief as this Honorable Court deems just and proper.

### COUNT VI
### SLANDER (AS TO GALL ART)

*Gall Art realleges and reincorporates by reference the allegations contained in paragraphs 1-35 as if fully set forth herein.*

71.     Tisch has intentionally and maliciously published, or through her gross negligence caused to be published, false or materially misleading oral statements, or oral statements which create a false impression, about Gall Art to the fine art community, without a privilege to do so.

72.     Tisch wrongfully and maliciously contacted Haber and Day and slandered Gall Art's title to the Artwork by publishing a letter and by verbally advising Haber and Day that the Artwork was stolen from Tisch and that Tisch is the true owner of the Artwork. Moreover, Tisch falsely claimed, without even the faintest knowledge of who Hendel or Gall Art are, that if Day released the Artwork to Gall Art, Gall Art would secrete it and sell it on the black market. The Artwork was only in New York for a mere footfall

when Tisch made her libelous and slanderous publications, in, among other places, Florida, causing damage to Gall Art in the State of Florida, and were published throughout the close-knit art world both domestically and internationally, and have been widely reported in mediums of public communication, which reports were published, among other places, in Miami-Dade County, Florida.

73.    The repeated republication of these false statements about Gall Art by third parties, both orally and in writing, was reasonably foreseeable by Tisch, who is herself a sophisticated collector of fine art, and a prominent member of the fine art community. The fine art community is a reputation-driven, close-knit community, and clients and potential clients frequently discuss art dealers both orally, through written correspondence and through social networking websites.

74.    The reputation of an art dealer is essential to the art buying public in determining the value, genuineness and title to fine art as represented by an art dealer such as Gall Art, the trust in which art dealer by its clientele being essential to provide the confidence and assurance to a buyer that they are acquiring title to a genuine work of art in their purchase from an art dealer. The fine art trade revolves around trust, and damage to an art dealer's reputation is ruinous to that dealer's business.

75.    The false statements communicated by Tisch to third parties were of such a nature that the business reputation and status of Gall Art as a dealer of fine arts has been completely undermined, diluted and impaired.

76.     The false statements were disseminated within the fine art community subjecting Gall Art to embarrassment, disrepute and negative business and economic consequences.

77.     As a direct and proximate result of the foregoing misconduct of Tisch, Gall Art has suffered monetary damages stemming from, *inter alia*, loss of goodwill in its company's name, lost income, profits and business opportunities, as well as from public humiliation, obloquy and ostracism from the art dealing community, disparagement of its reputation in the business community, and the loss of its reputation as a fair and honest dealer in fine art.

**WHEREFORE,** Plaintiff, Gallery Art Group, Inc. d/b/a Gallery Art, demands judgment against the Defendant, Wilma Tisch, for monetary damages, consequential damages, punitive damages, pre- and post-judgment interest and court costs, together with such other and further relief as this Honorable Court deems just and proper.

## COUNT VII
### SLANDER *PER SE* (AS TO GALL ART)

*Gall Art realleges and reincorporates by reference the allegations contained in paragraphs 1-35 as if fully set forth herein.*

78.     Tisch has intentionally and maliciously published, or through her gross negligence caused to be published, false or materially misleading oral statements, or oral statements which create a false impression, about Gall Art to the fine art community, without a privilege to do so.

79.     Tisch wrongfully and maliciously contacted Haber and Day and slandered Gall Art's title to the Artwork by publishing a letter and by verbally advising Haber and Day that the Artwork was stolen from Tisch and that Tisch is the true owner of the Artwork. Moreover, Tisch falsely claimed, without even the faintest knowledge of who Hendel or Gall Art are, that if Day released the Artwork to Gall Art, Gall Art would secrete it and sell it on the black market. The Artwork was only in New York for a mere footfall when Tisch made her libelous and slanderous publications, in, among other places, Florida, causing damage to Gall Art in the State of Florida, and were published throughout the close-knit art world both domestically and internationally, and have been widely reported in mediums of public communication, which reports were published, among other places, in Miami-Dade County, Florida.

80.     The repeated republication of these false statements about Gall Art by third parties, both orally and in writing, was reasonably foreseeable by Tisch, who is herself a sophisticated collector of fine art, and a prominent member of the fine art community. The fine art community is a reputation-driven, close-knit community, and clients and potential clients frequently discuss art dealers both orally, through written correspondence and through social networking websites.

81.     Due to the nature of the false statements, and especially because they speak to and negatively affect Gall Art's business character and status in the fine art dealing community, the statements are slanderous *per se*, and malice and damages are presumed.

Notwithstanding such a presumption, Tisch acted with malice, moral turpitude, gross negligence, reckless indifference of the rights of others, wantonness, oppression and/or outrageous aggravation towards Gall Art. If Tisch's conduct was permitted without rebuke, it would encourage others to engage in such reprehensible misconduct.

82.     The reputation of an art dealer is essential to the art buying public in determining the value, genuineness and title to fine art as represented by an art dealer such as Gall Art, the trust in which art dealer by its clientele being essential to provide the confidence and assurance to a buyer that they are acquiring title to a genuine work of art in their purchase from an art dealer. The fine art trade revolves around trust, and damage to an art dealer's reputation is ruinous to that dealer's business.

83.     The false statements communicated by Tisch to third parties were of such a nature that the business reputation and status of Gall Art as a dealer of fine arts has been completely undermined, diluted and impaired.

84.     The false statements were disseminated within the fine art community subjecting Gall Art to embarrassment, disrepute and negative business and economic consequences.

85.     As a direct and proximate result of the foregoing misconduct of Tisch, Gall Art has suffered monetary damages stemming from, *inter alia*, loss of goodwill in its company's name, lost income, profits and business opportunities, as well as from public humiliation, obloquy and ostracism from the art dealing community, disparagement of its

reputation in the business community, and the loss of its reputation as a fair and honest dealer in fine art.

**WHEREFORE,** Plaintiff, Gallery Art Group, Inc. d/b/a Gallery Art, demands judgment against the Defendant, Wilma Tisch, for monetary damages, consequential damages, punitive damages, pre- and post-judgment interest and court costs, together with such other and further relief as this Honorable Court deems just and proper.

## COUNT VIII
### LIBEL (AS TO HENDEL)

*Hendel realleges and reincorporates by reference the allegations contained in paragraphs 1-35 as if fully set forth herein.*

86.     Tisch has intentionally and maliciously published, or through her gross negligence caused to be published, false or materially misleading statements, or statements which create a false impression, about Hendel to the fine art community, without a privilege to do so.

87.     Tisch wrongfully and maliciously contacted Haber and Day and slandered Gall Art's title to the Artwork by publishing a letter and by verbally advising Haber and Day that the Artwork was stolen from Tisch and that Tisch is the true owner of the Artwork. Moreover, Tisch falsely claimed, without even the faintest knowledge of who Hendel or Gall Art are, that if Day released the Artwork to Gall Art, Gall Art would secrete it and sell it on the black market. The Artwork was only in New York for a mere footfall when Tisch made her libelous and slanderous publications, in, among other places, Florida,

causing damage to Gall Art in the State of Florida, and were published throughout the close-knit art world both domestically and internationally, and have been widely reported in mediums of public communication, which reports were published, among other places, in Miami-Dade County, Florida.

88.    The repeated republication of these false statements about Hendel by third parties, both orally and in writing, was reasonably foreseeable by Tisch, who is herself a sophisticated collector of fine art, and a prominent member of the fine art community. The fine art community is a reputation-driven, close-knit community, and clients and potential clients frequently discuss art dealers both orally, through written correspondence and through social networking websites, and the false statements published by Tisch about Hendel have been widely reported in mediums of public communication.

89.    The reputation of an art dealer is essential to the art buying public in determining the value, genuineness and title to fine art as represented by an art dealer such as Gall Art, the trust in which art dealer by its clientele being essential to provide the confidence and assurance to a buyer that they are acquiring title to a genuine work of art in their purchase from an art dealer. The fine art trade revolves around trust, and damage to an art dealer's reputation is ruinous to that dealer's business.

90.    The false statements communicated by Tisch to third parties were of such a nature that the business reputation and status of Hendel as a dealer of fine arts has been completely undermined, diluted and impaired.

91.     The false statements were disseminated within the fine art community subjecting Hendel to embarrassment, disrepute and negative business and economic consequences.

92.     As a direct and proximate result of the foregoing misconduct of Tisch, Hendel has suffered monetary damages stemming from, *inter alia*, loss of goodwill in his and his company's name, lost income, profits and business opportunities, as well as from public humiliation, obloquy and ostracism from the art dealing community, disparagement of his reputation in the business community, and the loss of his reputation as a fair and honest dealer in fine art.

**WHEREFORE,** Plaintiff, Kenneth Hendel, demands judgment against the Defendant, Wilma Tisch, for monetary damages, consequential damages, punitive damages, pre- and post-judgment interest and court costs, together with such other and further relief as this Honorable Court deems just and proper.

## COUNT IX
### LIBEL *PER SE* (AS TO HENDEL)

*Hendel realleges and reincorporates by reference the allegations contained in paragraphs 1-35 as if fully set forth herein.*

93.     Tisch has intentionally and maliciously published, or through her gross negligence caused to be published, false or materially misleading statements, or statements which create a false impression, about Hendel to the fine art community, without a privilege to do so.

94.     Tisch wrongfully and maliciously contacted Haber and Day and slandered Gall Art's title to the Artwork by publishing a letter and by verbally advising Haber and Day that the Artwork was stolen from Tisch and that Tisch is the true owner of the Artwork. Moreover, Tisch falsely claimed, without even the faintest knowledge of who Hendel or Gall Art are, that if Day released the Artwork to Gall Art, Gall Art would secrete it and sell it on the black market. The Artwork was only in New York for a mere footfall when Tisch made her libelous and slanderous publications, in, among other places, Florida, causing damage to Gall Art in the State of Florida, and were published throughout the close-knit art world both domestically and internationally, and have been widely reported in mediums of public communication, which reports were published, among other places, in Miami-Dade County, Florida.

95.     The repeated republication of these false statements about Hendel by third parties, both orally and in writing, was reasonably foreseeable by Tisch, who is herself a sophisticated collector of fine art, and a prominent member of the fine art community. The fine art community is a reputation-driven, close-knit community, and clients and potential clients frequently discuss art dealers both orally, through written correspondence and through social networking websites, and the false statements published by Tisch about Hendel have been widely reported in mediums of public communication .

96.     Due to the nature of the false statements, and especially because they speak to and negatively affect Hendel's business character and status in the fine art dealing

community, the statements are libelous *per se*, and malice and damages are presumed. Notwithstanding such a presumption, Tisch acted with malice, moral turpitude, gross negligence, reckless indifference of the rights of others, wantonness, oppression and/or outrageous aggravation towards Hendel. If Tisch's conduct was permitted without rebuke, it would encourage others to engage in such reprehensible misconduct.

97.     The reputation of an art dealer is essential to the art buying public in determining the value, genuineness and title to fine art as represented by an art dealer such as Gall Art, the trust in which art dealer by its clientele being essential to provide the confidence and assurance to a buyer that they are acquiring title to a genuine work of art in their purchase from an art dealer. The fine art trade revolves around trust, and damage to an art dealer's reputation is ruinous to that dealer's business.

98.     The false statements communicated by Tisch to third parties were of such a nature that the business reputation and status of Hendel as a dealer of fine arts has been completely undermined, diluted and impaired.

99.     The false statements were disseminated within the fine art community subjecting Hendel to embarrassment, disrepute and negative business and economic consequences.

100.    As a direct and proximate result of the foregoing misconduct of Tisch, Hendel has suffered monetary damages stemming from, *inter alia*, loss of goodwill in his and his company's name, lost income, profits and business opportunities, as well as from

public humiliation, obloquy and ostracism from the art dealing community, disparagement of his reputation in the business community, and the loss of his reputation as a fair and honest dealer in fine art.

**WHEREFORE,** Plaintiff, Kenneth Hendel, demands judgment against the Defendant, Wilma Tisch, for monetary damages, consequential damages, punitive damages, pre- and post-judgment interest and court costs, together with such other and further relief as this Honorable Court deems just and proper.

## COUNT X
### SLANDER (AS TO HENDEL)

*Hendel realleges and reincorporates by reference the allegations contained in paragraphs 1-35 as if fully set forth herein.*

101.    Tisch has intentionally and maliciously published, or through her gross negligence caused to be published, false or materially misleading oral statements, or oral statements which create a false impression, about Hendel to the fine art community, without a privilege to do so.

102.    Tisch wrongfully and maliciously contacted Haber and Day and slandered Gall Art's title to the Artwork by publishing a letter and by verbally advising Haber and Day that the Artwork was stolen from Tisch and that Tisch is the true owner of the Artwork. Moreover, Tisch falsely claimed, without even the faintest knowledge of who Hendel or Gall Art are, that if Day released the Artwork to Gall Art, Gall Art would secrete it and sell it on the black market. The Artwork was only in New York for a mere footfall

when Tisch made her libelous and slanderous publications, in, among other places, Florida, causing damage to Gall Art in the State of Florida, and were published throughout the close-knit art world both domestically and internationally, and have been widely reported in mediums of public communication, which reports were published, among other places, in Miami-Dade County, Florida.

103.    The repeated republication of these false statements about Hendel by third parties, both orally and in writing, was reasonably foreseeable by Tisch, who is herself a sophisticated collector of fine art, and a prominent member of the fine art community. The fine art community is a reputation-driven, close-knit community, and clients and potential clients frequently discuss art dealers both orally, through written correspondence and through social networking websites.

104.    The reputation of an art dealer is essential to the art buying public in determining the value, genuineness and title to fine art as represented by an art dealer such as Gall Art, the trust in which art dealer by its clientele being essential to provide the confidence and assurance to a buyer that they are acquiring title to a genuine work of art in their purchase from an art dealer. The fine art trade revolves around trust, and damage to an art dealer's reputation is ruinous to that dealer's business.

105.    The false statements communicated by Tisch to third parties were of such a nature that the business reputation and status of Hendel as a dealer of fine arts has been completely undermined, diluted and impaired.

106.    The false statements were disseminated within the fine art community subjecting Hendel to embarrassment, disrepute and negative business and economic consequences.

107.    As a direct and proximate result of the foregoing misconduct of Tisch, Hendel has suffered monetary damages stemming from, *inter alia*, loss of goodwill in his and his company's name, lost income, profits and business opportunities, as well as from public humiliation, obloquy and ostracism from the art dealing community, disparagement of his reputation in the business community, and the loss of his reputation as a fair and honest dealer in fine art.

**WHEREFORE,** Plaintiff, Kenneth Hendel, demands judgment against the Defendant, Wilma Tisch, for monetary damages, consequential damages, punitive damages, pre- and post-judgment interest and court costs, together with such other and further relief as this Honorable Court deems just and proper.

**COUNT XI**
**SLANDER *PER SE* (AS TO HENDEL)**

*Hendel realleges and reincorporates by reference the allegations contained in paragraphs 1-35 as if fully set forth herein.*

108.    Tisch has intentionally and maliciously published, or through her gross negligence caused to be published, false or materially misleading oral statements, or oral statements which create a false impression, about Hendel to the fine art community, without a privilege to do so.

109.    Tisch wrongfully and maliciously contacted Haber and Day and slandered Gall Art's title to the Artwork by publishing a letter and by verbally advising Haber and Day that the Artwork was stolen from Tisch and that Tisch is the true owner of the Artwork. Moreover, Tisch falsely claimed, without even the faintest knowledge of who Hendel or Gall Art are, that if Day released the Artwork to Gall Art, Gall Art would secrete it and sell it on the black market. The Artwork was only in New York for a mere footfall when Tisch made her libelous and slanderous publications, in, among other places, Florida, causing damage to Gall Art in the State of Florida, and were published throughout the close-knit art world both domestically and internationally, and have been widely reported in mediums of public communication, which reports were published, among other places, in Miami-Dade County, Florida.

110.    The repeated republication of these false statements about Hendel by third parties, both orally and in writing, was reasonably foreseeable by Tisch, who is herself a sophisticated collector of fine art, and a prominent member of the fine art community. The fine art community is a reputation-driven, close-knit community, and clients and potential clients frequently discuss art dealers both orally, through written correspondence and through social networking websites.

111.    Due to the nature of the false statements, and especially because they speak to and negatively affect Hendel's business character and status in the fine art dealing community, the statements are slanderous *per se*, and malice and damages are presumed.

Notwithstanding such a presumption, Tisch acted with malice, moral turpitude, gross negligence, reckless indifference of the rights of others, wantonness, oppression and/or outrageous aggravation towards Hendel. If Tisch's conduct was permitted without rebuke, it would encourage others to engage in such reprehensible misconduct.

112.    The reputation of an art dealer is essential to the art buying public in determining the value, genuineness and title to fine art as represented by an art dealer such as Gall Art, the trust in which art dealer by its clientele being essential to provide the confidence and assurance to a buyer that they are acquiring title to a genuine work of art in their purchase from an art dealer. The fine art trade revolves around trust, and damage to an art dealer's reputation is ruinous to that dealer's business.

113.    The false statements communicated by Tisch to third parties were of such a nature that the business reputation and status of Hendel as a dealer of fine arts has been completely undermined, diluted and impaired.

114.    The false statements were disseminated within the fine art community, subjecting Hendel to embarrassment, disrepute and negative business and economic consequences.

115.    As a direct and proximate result of the foregoing misconduct of Tisch, Hendel has suffered monetary damages stemming from, *inter alia*, loss of goodwill in his and his company's name, lost income, profits and business opportunities, as well as from public humiliation, obloquy and ostracism from the art dealing community, disparagement

of his reputation in the business community, and the loss of his reputation as a fair and honest dealer in fine art.

**WHEREFORE,** Plaintiff, Kenneth Hendel, demands judgment against the Defendant, Wilma Tisch, for monetary damages, consequential damages, punitive damages, pre- and post-judgment interest and court costs, together with such other and further relief as this Honorable Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues triable as of right by a jury.

Dated: April 22, 2016.

Respectfully submitted,

STOK FOLK + KON
*Attorneys for Plaintiffs*
18851 NE 29th Avenue, Suite 1005
Aventura, Florida  33180
P.305.935.4440
F.305.935.4470

 _/s/ Robert A. Stok, Esq._
ROBERT A. STOK, ESQ.
Florida Bar No.: 857051
rstok@stoklaw.com
SHOHAM SEGAL, ESQ.
Florida Bar No.: 99145
ssegal@stoklaw.com
JOSEPH M. KAYE, ESQ.
Florida Bar No.: 117520
jkaye@stoklaw.com

# EXHIBIT "A"

## BILL OF SALE OF ART

Miami Art Fund, LLC; a Florida Company at 19294 East Country Club Drive, Aventura, FL 33180, (the "Owner and seller") hereby acknowledges through its undersigned officer and representative; Mahmoud Antar, that it has received from Kenneth Hendel and/or Gallery Art Inc. at 20633 Biscayne Blvd. Aventura, FL 33180 ("Buyer") the full and entire payment of $350,000 (Three hundred and fifty thousand) in wired funds and $150,000 (One Hundred and Fifty Thousand) in trade artwork listed in Exhibit "A" for that certain oil painting by Pablo Picasso as set forth on Exhibit B, hereto (note: the image is flipped on the attached).

## OWNERSHIP

Seller warrants and represents to be the lawful owner of the Art with all rights and privileges to dispose of the Art; that the Art is free from any claims and encumbrances. Upon receipt of funds, Buyer receives full title transfers.

Seller and Buyer agree that this Agreement is confidential. Neither Buyer nor seller can disclose this agreement or its content to anyone who is not a signatory to this Agreement. The obligations to ensure the confidentiality of this Agreement shall survive for five (5) years. Notwithstanding the above, In the event that Gallery Art and/or Kenneth Hendel have an interested party in the painting with a deposit, the above confidentiality clause is waived for the limited purpose to assist in the sale of the painting.

## ENTIRETY OF AGREEMENT

The terms and conditions set forth herein constitute the entire agreement between the parties and supersede any communications or previous agreement with respect to the subject matter and terms of this Agreement. There are no prior or contemporaneous written or oral understandings directly or indirectly related to this Agreement that are not set forth herein.

This Agreement shall be construed and enforced according to the laws of the State of Florida, without regard to its conflict or choice of law provisions.

IN WITNESS HEREOF, WE AFFIX OUR HAND AND SEAL to this Agreement:

By Seller/Owner:                          By Seller/Owner:

Date: _June 18th, 2013_                   Date: _6/8/2013_

_____                   _____
Miami Art Fund, LLC                       Gallery Art Inc.

Mahmoud Antar                             Kenneth Hendel
Managing Member                           Owner

1

EXHIBIT "A"

<u>Values</u>

| | |
|---|---|
| $35,000 | 3 Peter Max 30x40" |
| $10,000 | 20  hand embellished Peter Max Overpaints |
| $10,000 | 40 assorted Sam Park embellished canvas @ $250 |
| $10,000 | 4 Original Shvaiko |
| $10,000 | 5 Shortridge Originals |
| $10,000 | 4 Colemans |
| $8,000 | 3 Pino hand drawings |
| $7500 | 10 embellished Pino |
| $5,000 | Assortment of Arbe and Stiltz |
| $10,000 | 4 Erte gouches |
| $5,000 | 5 Norman Rockwells |
| $5,000 | Assorted Treby, Fairchild & Animation |
| $10,000 | 4 Original Perez |
| $10,000 | 5 Assorted Kaufmans |
| $4,500 | 1  Alexandra Nechita |

Exhibit "B"

Pablo Picasso

14" H X 8" W

Portrait de Marie-Therese



MA

3

# EXHIBIT "B"

**Outgoing Payments Report**

Company: Gallery Art Group Inc
Requester: Ramirez,Lexy
Run Date: 07/11/2013 12:14:19 PM EDT
Date Range: 06/17/2013 – 07/11/2013

**Bank of America**
**Merrill Lynch**

Domestic High Value (Wire)

| | |
|---|---|
| Status: | Confirmed by Bank |
| Transaction Number: | 13618E3808IQ0158 |

Debit Account Information

| | |
|---|---|
| Debit Bank: | 063100277 |
| Debit Account: | 898045464156 |
| Debit Account Name: | GALLERY ART GROUP |
| Debit Currency: | USD |

Beneficiary Details

| | | | |
|---|---|---|---|
| Beneficiary Name: | Miami Art Fund LLC | Beneficiary Account: | 5765323967 |
| Beneficiary Address: | 19294 East Country Club Drive | Beneficiary Bank ID: | 121000248 |
| Beneficiary City: | Aventura | | WELLS FARGO BANK, NA |
| Beneficiary Postal Code: | 33180 | | 464 CALIFORNIA ST |
| Beneficiary Country: | US-United States of America | | SAN FRANCISCO |
| | | | US-United States of America |
| | | Beneficiary Email: | mahmoudantar@gmail.com |
| | | Beneficiary Mobile Number: | |

Payment Details

| | | | |
|---|---|---|---|
| Currency: | USD | | |
| Credit Amount: | 350,000.00 | Value Date: | 06/18/2013 |

Optional Information

| | | |
|---|---|---|
| Sender's Reference Number: | 13618E3808IQ0158 | Beneficiary Information: |

Additional Routing

| | | |
|---|---|---|
| Intermediary Bank ID: | | Receiver Information: |

Control Information

| | | | |
|---|---|---|---|
| Input: | lramirez | Input Time: | 06/18/2013 3:36:14 PM EDT |
| Approved: | lramirez | Time: | 06/18/2013 3:38:35 PM EDT |
| Initial Confirmation: | WTX:2013061800251026 | | |
| Confirmation #: | FEDR;20130618B6B7HU4R008711 | | |

# EXHIBIT "C"

IMPRESSIONIST & MODERN ART EVENING SALE

NEW YORK 7 MAY 2013

PROPERTY OF A PRIVATE AMERICAN COLLECTOR

## 68 Pablo Picasso

1881 - 1973

TÉTE (PORTRAIT DE MARIE-THÉRÈSE)

Signed Picasso (lower left); dated *Dinard 12 Août 1928* and inscribed *No. 2* on the stretcher
Oil on Canvas
14 by 7½ in.
35.5 by 19 cm
Painted on August 12, 1928.

$700,000-900,000

PROVENANCE
Knoedler Gallery, New York
Laurence Tisch, New York
Private Collection, New York (acquired from the above)
Thence by descent to the present owner

LITERATURE
Christian Zervos, *Pablo Picasso, oeuvres de 1926 à 1932*, vol. 7, Paris, 1955, no. 228, illustrated pl. 90

The Picasso Project, ed., *Picasso's Paintings, Watercolors, Drawings and Sculptures, Toward Surrealism, 1925-1929*, San Francisco, 1996, no. 28-176, illustrated p. 162

Robert Rosenblum, "Picasso's Blond Muse: The Reign of Marie-Thérèse Walter," *Picasso and Portraiture, Representation and Transformation* (exhibition catalogue), The Museum of Modern Art, New York, 1996, illustrated p. 344



Fig. 1 Marie-Thérèse Walter circa 1930.
Photograph © Archives Maya Widmaier Picasso

This rare, early portrait of Marie-Thérèse evidences Picasso's obsession with his lover's angular facial features. The picture dates from August of 1928, when the two were secretly spending time together on the beaches of Dinard in the north of France. While many of Picasso's sculptures, paintings and drawings from this era specifically focus on Marie-Thérèse's Grecian features and athletic body, this intimate and unusually-formatted canvas zeros-in on her sharp profile. The smooth lines of her silhouette are not unlike the pieces of polished rock and driftwood smoothed by the tides that Picasso had found so aesthetically fascinating that summer.

The present oil is one of a few realistic portrayals of his mistress that Picasso completed that August. As John Richardson tells us in his biography of the artist, Marie-Thérèse joined Picasso in Dinard on August 5, and he was so thrilled to see her that he immediately set out on painting intimate renderings of her image, as if she was now his to possess: "With Marie-Thérèse by his side, Picasso no longer needed to conceptualize her. Each day, he would do several small paintings of her. At first, he depicted her as an assemblage of sticks, beach balls, and boomerangs, trying to enter his beach cabana and then he gradually transformed her into a cutout, playing ball with other identical cutouts of herself" (John Richardson, *A Life of Picasso, The Triumphant Years, 1917-1932*, New York, 2007, p. 360). With its extreme linear precision, the present composition falls into place amidst this series of depictions.

One of the first owners of this canvas was Laurence Tisch (1923-2003), the self-made New York billionaire investor and chairman of CBS. Tisch is most remembered as a major philanthropist, and his legacy as patron of the arts is perhaps best known by the performing arts and media school named in his honor at New York University.

248



# COMPOSITE

# EXHIBIT "D"

# B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

575 LEXINGTON AVENUE ● 7th FLOOR ● NEW YORK, NY 10022 ● PH. 212-446-2300 ● FAX 212-446-2350

April 14, 2016

Michael Haber
Wooster Projects
New York, New York

Dear Mr. Haber:

I represent Mrs. Laurence A. Tisch and write regarding a painting by Pablo Picasso, entitled *Portrait of De Marie-Therese*. We have reason to believe the Work was stolen from Mrs. Tisch. We therefore request that you immediately (a) identify the current location of the Work, (b) identify the person who currently possesses the Work, (c) identify the person who purports to own the Work, (d) refrain from moving the Work, and (e) provide this letter to each individual you believe to have any involvement in the offered sale of the Work and request their cooperation in complying with these requests.

Mrs. Tisch learned this week that you were offered the Work and that the following provenance was provided to you: "Knoedler Gallery, New York; Laurence Tisch, New York; Private Collection, New York (acquired from the above); Thence by descent to the present owner." In fact, however, we believe the Work was stolen from Mrs. Tisch. In these circumstances, the governing law is clear: a thief acquires no ownership of stolen art and has no power to pass good title. Further, the owner from whom artwork is stolen owns the work and is entitled to its return—regardless of how much time has passed since the theft. *The Solomon R. Guggenheim Foundation v. Lubell*, 77 N.Y.2d 311 (N.Y. 1991) (demand and refusal required to trigger statute). *See also O'Keeffe v. Snyder*, 83 N.J. 478 (N.J. 1980) (discovery required to trigger statute).

We request a written response no later than Friday, April 15, 2016, at 12:00PM. If we do not receive the requested information by this time, Mrs. Tisch will pursue all legal avenues necessary to obtain pre-litigation discovery from you and any other necessary parties and to recover the Work. We hope to have your cooperation in this matter.

Sincerely,

*/s/ Luke Nikas*

Luke Nikas

**Joseph Kaye**

| | |
|---|---|
| **From:** | Ken Hendel <kengallart@aol.com> |
| **Sent:** | Friday, April 15, 2016 12:12 AM |
| **To:** | Robert Stok |
| **Subject:** | Fwd: IMPORTANT - Pablo Picasso - Portrait of De Marie-Therese |
| **Attachments:** | image001.gif; ATT00001.htm; Tisch - 4-14-16 - Ltr to Haber.pdf; ATT00002.htm |

There is my painting sitting in a Ny wear house who just received this letter-
  Please advise

*GallArt.com*

*Ken Hendel*
*Gallery Art*
*20633 Biscayne Blvd*
*Aventura FL 33180*
*305 932 6166 o*
*305 439 7422 c*

*Buying & Selling Fine Art for over 25 years in the same location*
  *Sent from  IPhone*

Begin forwarded message:

> **From:** Andrew Weinstein <AWeinstein@twlf.com>
> **Date:** April 14, 2016 at 11:52:39 PM EDT
> **To:** "kengallart@aol.com" <kengallart@aol.com>, "camee@dayandmeyer.com"
> <camee@dayandmeyer.com>
> **Cc:** "lexy@gallart.com" <lexy@gallart.com>
> **Subject: IMPORTANT - Pablo Picasso - Portrait of De Marie-Therese**
>
> Dear Mr. Handel and Ms. Dugstad – I represent Michael Haber.  Attached please find correspondence
> which was received by Mr. Haber this evening in connection with the above-referenced work of
> art.  Please direct all future communications regarding this matter to my attention.
>
> Best regards,
>
> Andrew Weinstein

1

**Joseph Kaye**

| | |
|---|---|
| **From:** | KENGALLART@aol.com |
| **Sent:** | Saturday, April 16, 2016 6:07 PM |
| **To:** | Robert Stok |
| **Subject:** | Fwd: IMPORTANT - Pablo Picasso - Portrait of De Marie-Therese |

# GallArt.com

*Gallery Art*
*Ken Hendel*
*20633 Biscayne Blvd*
*Aventura FL 33180*
*(305) 932-6166 Gallery*
*(305) 439-7422 Mobile*
*(305) 937-2125 Fax*

## Please Visit Gallart.com To Join Our Mailing List For Events and Private Promotions,

Do not hesitate to contact me if you would like to view any of the artwork LIVE on our 24/7 LIVE CAMs. Please call or email with the title or art id; and I will bring the piece in front of our cameras. In the meantime you can go to GallArt.com on our homepage and click on either the FRONT or CENTER camera icons to start viewing. You will have 360 degrees of control, pan and zoom capabilities. Super simple just, "1-Click, That's It" - No Download required.

From: camee@dayandmeyer.com
To: AWeinstein@twlf.com, KENGALLART@aol.com, popartists@gmail.com
Sent: 4/15/2016 1:16:59 P.M. Eastern Daylight Time
Subj: RE: IMPORTANT - Pablo Picasso - Portrait of De Marie-Therese

Good afternoon,

It is our policy that we do not release property in which ownership is in question; therefore, we will not be releasing the work until this matter has been resolved. We will need proper documentation stating who the owner is as well.

Thank you,

Camee

1

*Camee Dugstad*

*Day & Meyer, Murray & Young Corp.*

*1166 Second Avenue*

*New York, NY 10065*

*P: (212) 838-5151*

*F: (212) 759-4901*

www.dayandmeyer.com

---

**From:** Andrew Weinstein [mailto:AWeinstein@twlf.com]
**Sent:** Thursday, April 14, 2016 11:53 PM
**To:** kengallart@aol.com; camee@dayandmeyer.com
**Cc:** lexy@gallart.com
**Subject:** IMPORTANT - Pablo Picasso - Portrait of De Marie-Therese

Dear Mr. Handel and Ms. Dugstad – I represent Michael Haber.  Attached please find correspondence which was received by Mr. Haber this evening in connection with the above-referenced work of art.  Please direct all future communications regarding this matter to my attention.

Best regards,

Andrew Weinstein

---



ANDREW J. WEINSTEIN

The Weinstein Law Firm PLLC
800 Third Avenue, 18th Floor
New York, NY 10022
T 212.582.8900
F 212.582.8989
www.twlf.com

The information contained in this e-mail communication and any attachments is intended solely for the party to whom it was sent and may contain privileged and/or confidential information.  If this communication has been delivered to a third party who is not the intended recipient, please notify the sender immediately at (212) 582-8900.  Any unauthorized use, dissemination, distribution or copying of this communication is strictly prohibited.  To the intended recipient:  We consider that sending this e-mail provides confidentiality protection.  PLEASE NOTE:  Our Anti-Spam/Virus firewall sometimes eliminates legitimate e-mail communications.  If your e-mail contains important information or instructions please confirm that we have received your message.

# EXHIBIT "E"

PARKE · BERNET GALLERIES · INC.

980 MADISON AVENUE · NEW YORK 21

*Public Sales and Appraisals of Art and Literary Property*

TELEPHONE TRAFALGAR 9-8300

Sale Number     2371 #1/14
                        4-5

Date     OCT. 14     19  6:

*INVOICE*

MR. LAURENCE TISCH
123 BIRCHALL DRIVE
SCARSDALE, N.Y.

COLLECTION

TERMS: CASH IN NEW YORK FUNDS

VARIOUS OWNERS

| NUMBER | DESCRIPTION | AMOUNT | TOTAL |
|---|---|---|---|
| 120A | LA PENSEUSE | 11000 00 | 11000 00 |
| | Rec'd 10/21/45 Geo. Sp. #517 | | |
| | TO BE SHIPPED TO: MR. CHARLES B. BENENSON 15 DOLMA ROAD SCARSDALE, NEW YORK | | |
| | 2% NYS. TAX IF SHIPPED BY I.C.C. CARRIER | 220 00 | |
| | | | 11220 00 |

New York City Sales Tax 4%
Federal Excise Tax 10%

☐ DEALER   ☐ I.C.C.   ☐ EXEMPT INSTITUTION

*PURCHASES DELIVERED ONLY ON PRESENTATION
OF RECEIPTED INVOICE*

*All sales are for cash, and bills are payable before delivery of merchandise*
*Any unpaid balance outstanding 30 days after sale will incur an interest charge of 5% per annum*

Form 1

93